The next case for argument is 24-1471, ABC Corporation v. Partnership And Unincorporated Associations The next case for argument is 24-1471, ABC Corporation v. Partnership And Unicorporated And because the hourglass shape is, as we already said, the dominant feature of this design, you can't help but start looking at the other features, the other elements. And then we can see why the district court found, for example, the fenders of the accused products to look very distinctly different from the fenders of the patented designs. And then there's the neck, and then there's the decorative elements. And all together, I mean, I don't know what more you expected the district court to say beyond what it said after it itemized all of these clear differences and then ultimately concluded they ultimately create a different commercial impression compared to the patented designs. Your Honor, what we would expect the district court to have done is to then analyze the products together, including all of those pieces, so that you'd have, for lack of a better term, a visual of the overall product, which has fenders, which has footpaths. Maybe the court did that, and I'm going to read out of JA-19. The district court said that the overall visual impression of each design can only be described with reference to these details, albeit taken together as a whole. That's JA-19. That seems to me to answer your concern. It looks like the district court did what you're saying it did not. Your Honor, if you refer to that portion of the opinion and also the later portion of the opinion on Appendix 18, his focus, though, at each of those times was on the individual components and not the product overall. While he says he does mention and use the term overall effect, the issue— He says that the overall effect, in this case, the overall effect can only be arrived at by consideration of all these details because there's so many of them. I believe it's also true that you have to consider all those details, but just as you consider those details, you also have to consider the fact that the accused products have fenders. Our product has fenders. The accused product has footpaths. Our product has footpaths. The accused products have— That's too high a level of generality because that runs you right into the teeth of the functionality doctrine, and that's why we don't just look at these broad concepts of elements of fenders and footpaths. Now we start looking at the actual designs and the appearance of those fenders and the appearance of those footpaths, and that's what the district court did and identified clear differences between the accused product's footpaths and the patented design's footpaths, the same thing with the fenders. You don't get coverage for all fenders for hoverboards. You just don't. This is a design patent. Of course, Your Honor, but what you do get is a design patent for the overall impression of the product. And in assessing the overall impression, you also exclude trivial details as to certain aspects of those things. So for example, with regard to the neck, there is a slight raise in the patent and suit on the neck, whereas it's flat on the accused products. They dip down. Well, some dip down, a few dip down, and some are flat. But looking at those as the ordinary observer and as, quite frankly, a retail purchaser of those items, you're going to see the hoverboard entity. You're not necessarily going to focus on that slight dip or that slight raise. You're looking at the overall product. And those types of details, and this is what focuses on the Crocs case, those sorts of trivial details with regard to certain things that are distinguishing aspects of the patent and of the product are things that you have to— that's why you have to consider the overall visual impression of the product as a whole, not through its component parts. But here, after you put the hourglass shape to the side, it appears to me that the district court looked at all of the remaining elements. And I don't think you can say that they're merely trivial. They are the remaining visual elements of the accused product and patented designs. And if you look at them together as a whole, they still resonate visually as to a hoverboard with fenders, similar to the patent suit, with a neck, and with the footpads. And the details we were talking about, for example, let's focus on the footpads. The differences in the footpads are essentially the lines or design of the footpads, not the presence or existence of the footpads. I think the biggest clear difference that strikes me right away is the fenders. I mean, the accused products, they have these flat, angular flares that don't cover much the tires, at least compared to the patent design's fenders, which cover much more of the wheel. Again, if you look at those issues— And again, you don't get all fenders. I know I don't get all fenders, but we get fenders to the extent that they're part of the overall design. And there might be differences between those fenders and our fenders. And I'm not going to say there aren't differences, but they are not so much so that you neglect— they change the overall visual impression of the hoverboard. I'm sorry. Your Honor, did you have any other questions? I'm sorry. Thank you, Your Honor. The second aspect of—other than what we've discussed here, the other aspect of the opinion where we would believe there's error by the district court is in not considering Mr. Hatch. I'm not sure if it's the same Mr. Hatch as the last case. I looked it different, Mr. Hatch. Okay. Thank you. But his opinion and his view as an expert on the visual impression of the product did raise an issue of—a tribal issue of fact for our case. And for that reason, we also believe that the district court should be reversed. All right. We're into your rebuttal, so I'm here from the other side. We won't say— Thank you. Thank you. My name is Wei Wang from Glacier Law. I represent the police, Simon Police, in this appeal. And, Your Honors, actually this infringement issue has been considered by the court back to 2022 at the preliminary injunction stage. This court vacated the preliminary injunction obtained by the appellants. In doing so, the court clearly stated, and I quote, that even cursory review of the four accused products showed that they are different from each other and displays the features not found in the assertive patent and the leaked features in the assertive patent. Further, this court also pointed out that the accused product D has prominent features that differ from the assertive patent. These are assessments. I mean, our analysis is different, as I'm sure you recognize, when we're dealing with review of a preliminary injunction or whether we're reviewing now, as we are, a grand or summary judgment. So it's a bit more of a detailed analysis. Yes, Your Honor. We didn't resolve this case in the earlier disposition. We could not have resolved the case in the earlier disposition, right? Yes, Your Honor. We acknowledged the different standards for the preliminary injunction and the other grant, the summary judgment. But the findings of the factual findings from this court still need to be respected and followed because this court finds there's a substantial difference from the accused product D with the assertive patent, such as the overall shape is different and the distinctive boxy and angled wheel covers is different. That's product D, right? Yeah, accused product D. That was only product D. Yes, but as for the appearance in their opposition to the motion for summary judgment and their opinion from Mr. Hatch, they just cast and paste all the similar notes, such as the flat surface and the open arched fender and the pronounced footpad areas to allege the infringement. But do you recognize that there's a bit of a tension, arguably, in our case law with respect to design patents because we've got to not consider or put in the background prior art, but the standard is still the overall appearance, which includes the prior art, does it not? So there is a tension there, don't you think? Yes, Your Honor. Actually, we believe that this district court has strictly followed the precedent by this court that view the overall impression of the accused product and the assertive patent in context of the pre-mart, and their focus on the caustic hourglass shape is predominant and highly relevant in the prior art, so their focus on the other features, details, showed in the assertive patent and the accused product. It's also worth noting that the features the district court mentioned in the summary judgment order, such as the fenders, the neck areas, the footpad design, and the lights are not even minor components of this product. They actually occupy the substantial portion of the design in both the accused products and the assertive patents. They constitute a primary aspect of the overall design. So I don't think there is any basis for the appellants to know that these are minor differences, and I don't think their expert, Mr. Head, has ever given a single reason to explain that, why this is viewed as minor differences. And also we believe that district courts never improperly dissect the design. They follow the rule, their analysis, the differences, actually the structural and the significant differences of the features of the accused products, and they combine them all to conclude that the overall impression of this accused product are substantially different from the assertive patent. And for the second issue that we do not believe there are any genuine dispute of material fact in this case that could be considered by the jury. The appellants relied heavily on the unspotted and conclusive expert report from Mr. Hatch. Setting aside the procedural issues of the expert report being untimely, the substance of Mr. Hatch's analysis... Wait a minute. Yeah, and you continuously referred to his report as being inadmissible, but the district court did not rule it inadmissible, right? Yes, Your Honor. There's no prosopio or challenge to that ruling here, so we're not going to re-litigate whether or not it was inadmissible or not. Yes, Your Honor. But we still believe the substance of Mr. Hatch's report is deeply flawed because he only provided conclusive statements without any explanation. The first, Mr. Hatch, the accused products and the patents are not plainly dissimilar. Just one sentence without any explanation. And second, they also asserted that it labels the significant difference identified by the district court as minor. Also, they gave no rationale why this difference should be considered as minor. Was the Hatch report in the record when it came up on the PI? Mm-hmm. No, No, Your Honor. Actually, the plaintiffs in the district court provided Mr. Hatch's report in support of their first and second preliminary injunction order. And after this court vacated that preliminary injunction order, the plaintiff immediately filed another motion for preliminary injunction order. And that provided in support of their third motion for preliminary injunction that called updated, excuse me, renewed report from Mr. Hatch. And even criticized... The district court denied the motion for preliminary injunction, the third preliminary injunction motion, and criticized Mr. Hatch's method in analysis, the difference and the infringement analysis. And in plaintiff's opposition to our motion for summary judgment of non-infringement that provide another renewed or updated report from Mr. Hatch. It's over, I think it's over 100 pages, more than 40 or 50 pages than all the previously reported by Mr. Hatch. We also filed a motion to strike Mr. Hatch's report in support of the plaintiff's motion opposition for summary judgment, but the court did not rule on that because the court... Well, they didn't grant your motion, so whether or not you want to grant, the motion was not granted. Yes, Your Honor. So the district court moved that motion and that granted our motion for non-infringement. So that just moved that motion. So the first thing I believe that... Actually, we believe the appellants just argued that if the accused products are not plainly dissimilar to the assertive patterns, there should be no summary judgment. That is clearly not the law, and this court has also repeatedly affirmed the summary judgment of non-infringement whenever the difference between the designs are plainly dissimilar or not. So we respectfully request the court to affirm the summary judgment. Thank you, Your Honor. Thank you. Thank you, Your Honor. Just briefly, just to clarify one point, you had asked with regard to the Hatch Report whether or not it was the same from the PI. It was not. What happened after the decision on the PI in this court, there was further proceedings relating to a new PI in the district court where there was a separate amended Hatch Report, and there was also an additional Hatch Report that was submitted in opposition reply to expert reports that were submitted by the defendants in both connection with the PI and also in connection with the summary judgment motion. Just for the record. And those are part of the record. Just to conclude, Your Honors, this case is about the whole design, and the court below turned the ordinary observer test into a parts test, discounting shared prior art, distinguishing features and elevating trivial variances. And on this record, reasonable jurors could see the accused hoverboards as substantially the same overall. So judgment of non-impringement was error. If there are no further questions, I appreciate your time. Thank you. Thank you. Thanks both sides. The case is submitted.